## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ASHLEY DANIELLE GODWIN,

       Plaintiff,

       v.

KILOLO KIJAKAZI,[1] Acting
Commissioner of Social Security,

       Defendant.

CIVIL ACTION NO. 3:20-cv-02421

(SAPORITO, M.J.)

## **MEMORANDUM**

In this matter, the plaintiff, Ashley Danielle Godwin, seeks judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. She has been automatically substituted in place of the original defendant, Andrew Saul. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

## I.   BACKGROUND

On June 18, 2018, Godwin protectively filed an application for supplemental security income, asserting a disability onset date of December 1, 2009. Her claim was initially denied by state agency reviewers on December 12, 2018. The plaintiff then requested an administrative hearing.

A hearing was subsequently held on October 16, 2019, before an administrative law judge, Lawrence J. Neary (the "ALJ"). In addition to the plaintiff herself, the ALJ received testimony from an impartial vocational expert, Paul A. Anderson. The plaintiff appeared and testified at the hearing without the assistance of an attorney or other representative.[2]

On January 30, 2020, the ALJ denied Godwin's application for benefits in a written decision. The ALJ followed the familiar five-step sequential evaluation process in determining that Godwin was not disabled under the Social Security Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step

---

[2] She is represented by counsel in this action for judicial review of the Commissioner's decision denying her application for benefits.

sequential evaluation process). At step one, the ALJ found that Godwin had not engaged in substantial gainful activity since her application date. At step two, the ALJ found that Godwin had the severe impairments of: major depressive disorder; generalized anxiety disorder; bipolar disorder; and borderline personality disorder.

At step three, the ALJ found that Godwin did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered Godwin's limitations in four broad functional areas as a result of her mental disorders, finding moderate limitations in three functional areas—(1) ability to understand, remember, or apply information, (2) ability to interact with others, and (3) ability to concentrate, persist, or maintain pace—and mild limitations in the fourth area—ability to adapt or manage oneself. *See generally* 20 C.F.R. § 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app.1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments).

Between steps three and four of the sequential-evaluation process, the ALJ assessed Godwin's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, the ALJ found that Godwin had the RFC to perform the full range of work at all exertional levels, as defined in 20 C.F.R. § 416.967, with the following non-exertional limitations:

> [The claimant is] limited to simple, routine tasks, with no interaction with the public and occasional interaction with supervisors and coworkers, but no requirement of teamwork on the job.

(Tr. 14.)

In making these factual findings regarding Godwin's RFC, the ALJ considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. § 416.929; Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). The ALJ also considered and articulated how persuasive he found the medical opinions and prior administrative medical findings of record. *See generally* 20 C.F.R. § 416.920c.

At step four, the ALJ found that Godwin had no past relevant work.

At step five, the ALJ concluded that Godwin was capable of performing other work that exist in significant numbers in the national economy. Based on her age, education, work experience, and RFC, and based on testimony by the vocational expert, the ALJ concluded that Godwin was capable of performing the requirements of representative occupations such as: washer, agricultural produce (DOT #529.685-258); sorter, agricultural produce (DOT # 529.687-186); or sexton (DOT # 389.667-010).[3] Based on this finding, the ALJ concluded that Godwin was not disabled for Social Security purposes.

The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on November 12, 2020, making the ALJ's January 2020 decision the final decision of the Commissioner subject to judicial review by this court.

Now represented by counsel, the plaintiff timely filed her complaint

---

[3] Because there seems to have been some confusion at the administrative hearing, we note for the plaintiff's benefit that the occupation of sexton is also known by the alternate title of "janitor, church." It has nothing whatsoever to do with the sex trade. *See generally* DICOT 389.667-010 ("Takes care of church buildings and furnishings . . . ."); *sexton*, Merriam-Webster Collegiate Dictionary ("a church officer or employee who takes care of the church property and performs related minor duties (such as ringing the bell for services and digging graves)").

in this court on December 23, 2020. The Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II. DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Godwin asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to adequately develop the record in this matter; (2) the ALJ erred in finding certain impairments non-severe; and (3) the ALJ improperly evaluated and relied on prior administrative findings, including the medical findings and opinion of a non-examining state agency psychological consultant, in

the absence of any medical opinion by examining medical sources.[4]

## A. Development of the Record

Although now represented by counsel, the plaintiff represented herself in the administrative proceedings, without the assistance of an attorney or other representative.

First, we must address the threshold question of whether Godwin knowingly and intelligently waived her right to counsel.

> Though a claimant does not have a constitutional right to counsel at a social security disability hearing, she does have a statutory and regulatory right to counsel at such a hearing. The claimant must be given notice of the right to counsel and can waive this right only by a knowing and intelligent waiver.

*Vivaritas v. Comm'r of Soc. Sec.*, 264 Fed. App'x 155, 157 (3d Cir. 2008) (citations omitted). "Unlike other circuits, the Third Circuit has not clearly defined a standard for what an ALJ must do to obtain a 'knowing and intelligent' waiver of a *pro se* claimant's right to counsel." *Neifert v.*

---

[4] The plaintiff's brief articulated the third claim of error more generally as a failure by the ALJ to include additional functional limitations in his RFC determination. Although not clearly articulated by plaintiff's counsel, the gist of the plaintiff's argument is that the ALJ improperly relied on the medical findings of the non-examining state agency psychological consultant rather than ordering a consultative psychological examination.

*Saul*, Civil No. 1:20-CV-453, 2020 WL 6585897, at *4 (M.D. Pa. Nov. 10, 2020). "A determination of whether the claimant waived the right to counsel knowingly and intelligently determines who has the burden of demonstrating whether remand is appropriate." *Vivaritas*, 264 Fed. App'x at 158.

Here, we note that, although this case involves a claimant with mental impairments, Godwin's mental health issues concern mood disorders and anxiety, with no documented perceptive or cognitive deficits. Prior to her administrative hearing, Godwin received written notice concerning her right to representation, which informed her of the manner in which an attorney could aid in the proceedings, the possibility of free counsel or a contingency arrangement, and the limitation on attorney fees to 25% of past due benefits and required approval of the fees by the agency or a court. (Tr. 112–17.) *See Vivaritas*, 264 Fed. App'x 157 n.1. At the hearing, the ALJ asked Godwin if she had received the written notice and understood it; Godwin confirmed that she did receive and understand it. (Tr. 58–59.) The ALJ then summarized the information provided in the written notice, verbally reiterating that an attorney or non-attorney representative could help her obtain

information about her claim, explain medical terms, and help protect her rights, and that a representative could not charge a fee or receive a fee without approval by the agency or a court. (Tr. 59.) Godwin acknowledged that she understood her right to representation, and she confirmed that she wished to proceed without an attorney of other representative. (*Id.*)

Under the circumstances presented in this case, we find the plaintiff knowingly and intelligently waived her right to representation in the underlying administrative proceedings. Thus, it is the plaintiff's burden to demonstrate that the ALJ failed to adequately develop the record in the administrative proceedings below. *See Vivaritas*, 264 Fed. App'x at 158. "When the claimant has been informed of his right to counsel before an administrative hearing and knowingly waives it, his lack of representation is not, of itself, cause for remand. Lack of counsel is sufficient cause for remand only if supported by a showing of clear prejudice or unfairness at the administrative hearing." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979).

"An ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record. When a claimant appears at a hearing without counsel, the ALJ must scrupulously and conscientiously probe into,

inquire of, and explore for all relevant facts." *Reefer v. Barnhart*, 326 F.3d 376 (3d Cir. 2003) (internal quotation marks omitted). *See generally Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) ("ALJs have a duty to develop a full and fair record in social security cases."). Indeed, "[t]he ALJ's duty to develop the record . . . is even more compelling when the pro se claimant has a mental impairment." *Rosa v. Colvin*, 956 F. Supp. 2d 617, 623 n.12 (E.D. Pa. 2013).

In this case, we find no error by the ALJ. Although the administrative record in this case is relatively thin,[5] it appears to be so not because the ALJ failed to obtain the relevant medical evidence from Godwin's medical sources, but because her medical and mental health encounters during the relevant period simply did not generate the volume of documentation that might be present in a case involving more extensive functional impairment. There are no apparent gaps in the medical records gathered by the ALJ. *See Rosa*, 956 F. Supp. 2d at 623 n.10. The ALJ appears to have gathered treatment records from all of the

---

[5] The plaintiff notes in her brief that the ALJ's summary of the entire medical record is one paragraph, less than a page long. (Doc. 13, at 17 n.3.) This is not an error. It simply reflects the unremarkable nature of the medical records summarized by the ALJ.

medical and mental health providers Godwin identified as having encountered during the relevant time period. *See id.* at 624 & n.13. The plaintiff has not proffered any new material evidence that was not before the ALJ. *See Davies v. Colvin*, Case No. 3:13-cv-2978-GBC, 2015 WL 5829760, at *10 (M.D. Pa. Sept. 30, 2015).

In her brief, the plaintiff suggests that the ALJ should have obtained consultative medical and psychological examinations of Godwin, rather than relying on the assessments of non-examining state agency medical and psychological consultants. The agency's regulations provide that it "may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on [a] claim." 20 C.F.R. § 416.919a(b). An ALJ has "broad latitude in ordering consultative examinations." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997).

> The decision to order a consultative examination is within the sound discretion of the ALJ unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision. Where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim.

*Chalfant v. Comm'r of Soc. Sec.*, Civil Action No. 4:20-CV-1719, 2022 WL

838118, at *5 (M.D. Pa. Mar. 21, 2022) (citations, internal quotation marks, and brackets omitted). In this case, however, while the medical evidence may not compel the conclusion the plaintiff desires, it is not inconclusive. Despite the plaintiff's arguments to the contrary, there is no inconsistency in the evidence. Finally, as we discuss more fully below, the evidence as a whole is sufficient to support the ALJ's decision on the plaintiff's claim for benefits. Because a consultative examination—medical or psychological—was not necessary to enable the ALJ to make his disability decision, we find no abuse of discretion in the ALJ's decision not to order one.

Accordingly, we find that the ALJ adequately developed the record in the administrative proceedings below. Thus, a remand on these grounds is not warranted.

## B. Step Two Determination

The plaintiff contends that the ALJ erred in finding that various of Godwin's medical conditions were not severe impairments.

### 1. Non-Medically Determinable Impairments

At step two, the ALJ considered Godwin's allegation that she was disabled due to degenerative disc disease and arthritis, but he found that

these were not medically determinable impairments. (*Id.*) A "medically determinable impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). As the ALJ explained:

> Radiographs of the cervical spine, thoracic spine, lumbar spine, and left hip in January 2013 revealed no abnormalities. The claimant was subsequently evaluated for back pain in August 2014, and a bone scan reportedly revealed dextroscoliosis and mild thoracic level disc degenerative changes but no active facet arthropathy; however, these images are not in the record. Nonetheless, at a follow-up to the Pain Management Clinic on May 10, 2017, the claimant was only diagnosed with thoracic back pain and myofascial pain. She was given a foam roller and used muscle relaxers in addition to participation in physical therapy. The claimant is able to exercise and does not require ongoing treatment for her pain other than as needed follow-up appointments with her primary care physician.

(Tr. 12 (citations omitted).) The ALJ also noted that his finding—that these were not medically determinable impairments—was consistent with the uncontradicted medical opinion of the state agency medical consultant, Carl Ritner, D.O., who had likewise found for the same reasons that the alleged degenerative disc disease and arthritis were not medically determinable impairments. (*Id.*; *see also* Tr. 91.)

In the absence of any objective medical evidence to support the plaintiff's allegation of degenerative disc disease and arthritis, we find that there is substantial evidence to support the ALJ's finding that Godwin's alleged degenerative disc disease and arthritis were not medically determinable impairments. *See Scipio v. Comm'r of Soc. Sec.*, 611 Fed. App'x 99, 101–02 (3d Cir. 2015) (per curiam). Because the ALJ is only required to consider medically determinable impairments, *see* 20 C.F.R. §§ 416.921, 416.945(a)(2), the ALJ's failure to consider the plaintiff's alleged degenerative disc disease and arthritis conditions in later determining her RFC was not in error. *See Switzer v. Comm'r of Soc. Sec.*, No. 1:18-cv-16554-NLH, 2019 WL 5485526, at *6 (D.N.J. Oct. 24, 2019) (finding that, in determining a claimant's RFC, "the ALJ does not need to consider any alleged conditions that are not medically determinable").

## 2. Non-Severe Impairments

At step two, the ALJ also noted that Godwin had a history of anemia, skin lesion, alcoholic intoxication without complication, obesity, and headache, but there was no evidence that Godwin had any symptoms related to these conditions that had persisted for twelve months or that

would affect her ability to perform basic work activities. (Tr. 11–12.) The ALJ found that these additional non-severe medical conditions were "well managed with conservative treatment or they only cause minimal functional limitations from a longitudinal standpoint," and they were not associated with end organ damage or serious medical complications. (Tr. 12.)

But notwithstanding the ALJ's finding with respect to the severity of the foregoing conditions, the ALJ found that Godwin had several severe mental impairments: major depressive disorder; generalized anxiety disorder; bipolar disorder; and borderline personality disorder. (Tr. 11.) The ALJ then proceeded on to step three of the five-step sequential evaluation process.

At step two, a claimant bears the burden of proving that he suffers from "a medically severe impairment or combination of impairments." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). But the step-two inquiry is merely "a *de minimis* screening device to dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). "[T]he analysis at step two is wholly independent of the analysis at later steps. . . . [N]ot finding certain impairments severe at step two does not

affect the ultimate disability determination." *Alvarado v. Colvin*, 147 F. Supp. 3d 297, 311 (E.D. Pa. 2015); *see also Orr v. Comm'r Soc. Sec.*, 805 Fed. App'x 85, 88 (3d Cir. 2020) ("[B]ecause the ALJ progressed to a later step, any error at Step Two would not alter that remainder of the five-step process, much less the overall outcome."); *Ray v. Berryhill*, 915 F.3d 486, 492 (7th Cir. 2019) (per curiam) ("Step two is a threshold inquiry; so long as one of a claimant's limitations is found to be severe, error at that step is harmless."); *Salles v. Comm'r of Soc. Sec.*, 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [the claimant's] favor at Step Two, even if he had erroneously concluded that some other impairments were nonsevere, any error was harmless.").

Here, the ALJ found in Godwin's favor at step two, finding that she had several other severe impairments, and then proceeded on to step three of the five-step sequential evaluation process. Thus, any error with respect to evaluation of the severity of Godwin's conditions of anemia, skin lesion, alcoholic intoxication without complication, obesity, and headache at step two was harmless and provides "no valid basis for remand." *See Orr*, 805 Fed. App'x at 88.

## C. Evaluation of Medical Opinions

The plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ erred in his evaluation of and exclusive reliance upon prior administrative findings. As a preface, we note the well-established principle that, in evaluating the medical opinion evidence of record, an "ALJ is not only entitled, but required to choose between" conflicting medical opinions. *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [an ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Ultimately, to reverse the ALJ's findings and decision, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Immigration & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Smith v. Chater*, 99 F.3d 780, 782 & N.3 (6th Cir. 1996) (citing *Elias-*

*Zacarias* in the context of social security disability benefits); *Hert v. Barnhart*, 234 F. Supp. 2d 832, 837 (N.D. Ill. 2002) ("The court may reverse the Commissioner's decision only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision.") (citing *Elias-Zacarias*).

Here, the plaintiff originally filed her administrative claim for benefits in June 2018. Thus, a relatively new regulatory framework governing the evaluation of medical opinion evidence applies to this case.

"The new regulations have been described as a 'paradigm shift' in the way medical opinions are evaluated." *Knittle v. Kijakazi*, Civil No. 1:20-CV-00945, 2021 WL 5918706, at *4 (M.D. Pa. Dec. 15, 2021). "Prior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Densberger v. Saul*, Civil No. 1:20-CV-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under this prior regulatory scheme, the Social Security Administration "followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory

diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record." *Michelle K. v. Comm'r of Soc. Sec.*, 527 F. Supp. 3d 476, 481 (W.D. Pa. 2021). However, the regulations governing the evaluation of medical evidence were amended and the treating physician rule was eliminated effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017); *see also Densberger*, 202 WL 1172982, at *7–*8; *Michelle K.*, 527 F. Supp. 3d at 481. "The range of opinions that ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Densberger*, 2021 WL 1172982, at *7.

Under these new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). "Rather than assigning weight to medical opinions, [an ALJ] will articulate 'how persuasive' he or she finds the medical opinions." *Knittle*, 2021 WL 5918706, at *4; *see also* 20 C.F.R. § 416.920c(b). If a medical source provides one or more medical opinions, the agency will consider those

medical opinions from that medical source together using the following factors: "(1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that 'tend to support or contradict a medical opinion or prior administrative medical finding.'" *Michelle K.*, 527 F. Supp. 3d at 481; *see also* 20 C.F.R. § 416.920c(a); *Densberger*, 2021 WL 1172982, at *8. Under the new regulations, "[t]he two 'most important factors for determining the persuasiveness of medical opinions are consistency and supportability,' which are the 'same factors' that formed the foundation of the treating source rule." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 416.920c(b)(2); *Michelle K.*, 527 F. Supp. 3d at 481; *compare* 20 C.F.R. § 416.920c(c)(1) (supportability), and *id.* § 416.920c(c)(2) (consistency), *with id.* § 416.927(c)(3) (supportability), and *id.* § 416.927(c)(4) (consistency).[6] An ALJ is specifically required to address

---

[6] With respect to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more

*(continued on next page)*

these two factors in his or her decision. *See* 20 C.F.R. § 416.920c(b)(2); *see also Densberger*, 2021 1172982, at *8; *Michelle K.*, 527 F. Supp. 3d at 482. "The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K.*, 527 F. Supp. 3d at 482; *see also* 20 C.F.R. § 416.920c(b)(2); *Densberger*, 2021 WL 1172982, at *8. "However, when the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8; *see also* 20 C.F.R. § 416.920c(b)(3); *Michelle K.*, 527 F. Supp. 3d at 482.

The ALJ considered the prior administrative findings in this case, which included the findings and opinion of a state agency psychological consultant, Peter Garito, Ph.D., recorded on December 7, 2018.

Based on his review of Godwin's medical records, Dr. Garito considered whether Godwin's medically determinable mental

---

persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). With respect to consistency, the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

impairments met or medically equaled the severity of the listed impairments, finding that Godwin failed to satisfy the "B" criteria of the listings.[7] Dr. Garito found that Godwin had no more than moderate limitations in any of the four areas of mental functioning: he found that she had moderate limitations in the area of understanding, remembering, or applying information, the area of interacting with others, and the area of concentrating, persisting, or maintaining pace, and that she had mild limitations in the area of adapting or managing oneself. Dr. Garito explained his assessment by noting that Godwin had been in outpatient treatment for a mood disorder, with her most recent treatment note indicating "depressed and anxious mood only with no other deficits including cognitive ones[,] perceptual distortions[,] or [suicidal or homicidal ideation]. Recent group [therapy] note also indicated no serious deficits other than flat affect." (Tr. 92.)

Dr. Garito evaluated Godwin's mental residual functional capacity as well, finding that Godwin was subject to moderate limitations in her ability to understand, remember, and carry out detailed instructions, her

---

[7] Dr. Garito also found that she failed to satisfy the "C" criteria, but the plaintiff does not appear to challenge that assessment.

ability to maintain attention and concentration for extended periods, and her ability to interact appropriately with the general public, with no other limitations noted. Ultimately, Dr. Garito opined: "Claimant makes decisions. Claimant's memory is adequate. Claimant can attend regularly and would not need special supervision. Claimant understands and follows directions. Claimant gets along with others and can behave appropriately in social situations. Claimant can do one and two step tasks." (Tr. 93–95.)

Upon review of Dr. Garito's findings and opinion, the ALJ found it to be supported by and consistent with other evidence of record, and thus "persuasive." In particular, the ALJ stated:

> This opinion is persuasive, as the finding that the claimant has moderate mental limitations is consistent with the claimant's ability to manage her symptoms conservatively and perform most activities of daily living from a mental standpoint. The finding that she has moderate limitation in the ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public is supported by the mood abnormalities shown in the clinical setting and bizarre behavior noted at one ER visit. These findings are also consistent with the testimony of her mother that she has difficulty with relationships and the claimant's reports of paranoid thinking, depressed mood, insomnia and anxiety in determining that she has limited ability to interact

with others, understand, remember and carry out instructions, and maintain attention and concentration for extended periods. However, the undersigned finds that the testimony of her mother suggests additional limitation with coworkers and supervisors, consistent with the residual functional capacity [determination].

(Tr. 16.)

The plaintiff appears to object to this evaluation by the ALJ of the state agency psychological consultant's findings and opinion based solely on the fact that Dr. Garito never examined Godwin. But the medical opinion of a non-examining medical source, such as a state agency medical or psychological consultant, may serve as substantial evidence when the opinion is consistent with other medical evidence in the record. *See Nichols v. Comm'r of Soc. Sec.*, 404 Fed. App'x 701, 704–05 (3d Cir. 2010); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *My-Lein L. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 100, 107 (W.D.N.Y. 2021); *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 205 (S.D.N.Y. 2018).

Accordingly, we find the ALJ's evaluation of the prior administrative findings, including the medical opinions of the state agency psychological consultant, Dr. Garito, is supported by substantial evidence and was reached based upon a correct application of the relevant law.

## III.   CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Godwin was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits is **AFFIRMED**.

An appropriate Order follows.

Dated: April 1, 2022                    *__s/Joseph F. Saporito, Jr.__*
                                        JOSEPH F. SAPORITO, JR.
                                        United States Magistrate Judge